NOVION *v.* HALLETT, 16 J. R. 327, 347.
In S. Ct. 14 J. R. 273, 294.

</div>

*Admiralty Jurisdiction ; Marine Trespass ; Prize.*

THIS was an action of trover by Hallett, plaintiff below, for a brig and cargo. The plaintiff being owner of a brig called the Jane, sent her to trade in the West India seas, under Spanish colors. On the second of April, 1813, she set out on her voyage from Porto Cabello, loaded with a valuable cargo, protected from British capture by a Spanish owner and papers. On her voyage to New York, she was captured on the 26th of April, by a privateer called the San Francisco de Paula. This vessel was originally English, and being captured by a French privateer had become the property of Novion the defendant. She had been fitted out at Washington, North Carolina, by him, and when on her voyage to Carthagena, while inside Ocracock inlet, she had produced a commission stated to have been purchased at Carthagena,

and hoisted Carthagena colors. The master of the Jane expressly informed the captain of the privateer that she was American and not Spanish property, but merely covered as Spanish property to protect her from capture by the English. A lieutenant and five men were put on board the Jane, then called La Hija, and she was brought to Beaufort, North Carolina, where her former master, Rise, having discovered her, she was libelled at the suit of the plaintiff and the District Court of the United States decreed her to be restored with all her tackle and apparel and all the cargo that remained on board. Also damages against the commander of the Francisco for $1000 damages, &c. The court reserved its decision upon the claim for damages for the value of the cargo at the time of capture. No decision on it appeared to have been made.

On this evidence the defendant's counsel moved for a nonsuit on the grounds: 1. That a trover and conversion had not been proved. 2. That the cause of action had already been adjudicated upon by the District Court in North Carolina ; and that it was a question exclusively of admiralty jurisdiction. The motion was denied, and the judge charged the jury : 1. That if they believed the Francisco de Paula had a regular commission by a *de facto* government of New Granada or Carthagena, and claimed to act under it in capturing the brig as Spanish property, then the plaintiff was not entitled to recover, because the question of prize *or no prize*, belonged exclusively to admiralty jurisdiction. 2. That if the privateer had it and acted under it, yet if instead of treating the Jane as prize of war, she brought her disguised into the United States, and the defendant claimed to dispose of her, without condemnation, as his private property, then he was to be considered as a trespasser *ab initio*. 3. That if the captor had no commission, then it was legally an act of piracy, for which the captors were responsible *criminaliter* in the federal courts only, but the private injury was not merged in the felony. This charge was excepted to. Verdict for plantiff $29,687 80. On a motion for new trial, on the bill of exceptions,

The Supreme Court held that the charge of the judge was correct, and the plaintiff had judgment. Thompson, Ch. J.,

delivered the opinion of a majority of the court. "Several very important and difficult questions, have been raised and discussed on the argument which, according to the view I have taken of the case, it becomes unnecessary for me particularly to notice. The only question of doubt in the case was, whether this court has jurisdiction of the cause, or whether it is one of exclusive admiralty jurisdiction. That courts of common law have cognizance of marine trespasses, is a poin t nowhere questioned. It is not the plea, but the *nature* of the question that determines the jurisdiction of the court." He then goes on to argue that the privateer having been originally fitted out in the United States, in violation of an act of Congress, whether the commission was issued by competent authority, was altogether immaterial; for the very putting it on board within the jurisdiction of the United States, was illegal and itself a nullity. To inquire into this matter is not entertaining the question whether *prize* or not. " The illegal fitting out of this privateer in direct violation of the act of Congress, precludes the defendant from setting up the claim or pretence, that the taking was as prize; and it is upon this ground alone that I place my opinion that this court has jurisdiction of the cause." Judgment accordingly.

Spencer, J., dissented, holding that the subsequent conduct of the captors, and their treatment of the prize did not invalidate the capture itself. That if the capture was as *prize*, the common law can not notice it as a trespass. " The act of Congress is silent as to the consequences to result from a capture by a vessel thus fitted out, and it seems to me that it can not be doubted that a vessel though armed and fitted out in violation of that act may take a prize. It is *another question* whether it would be a valid capture. These considerations, however, do not belong to this court. We have no power to entertain the question. I only insist that the plaintiff has applied to the wrong forum." Yates, J., concurred with this opinion. On writ of error from this judgment,

The Court of Errors, (Chancellor Kent delivering the opinion in favor of *reversal*, and maintaining substantially the same grounds as those in Judge Spencer's opinion,) reversed the judgment of the Supreme Court unanimously, and ordered the defendant in error, to pay to the plaintiff in error two

hundred and thirty-two dollars *for his costs and charges in' and about the prosecuting of his writ of error, in this court*, with directions to the Supreme Court to award a *venire de novo, &c.*

The decision of the court was pronounced in an elaborate opinion, by Kent, Chancellor.—" That the owner of the privateer is justly responsible to the plaintiff for all the damages recovered, will not also be denied. The only question is, whether the common law courts of this state have jurisdiction of the case. It is admitted that they have no jurisdiction of the original taking; but it is asserted that the subsequent disposition of the subject, if it be not treated as prize of war, may render the captor a trespasser *ab initio,* and liable to an action of trespass at the common law.

" I apprehend that no such distinction exists, and that if property be taken in the first instance as prize of war, the subsequent conduct of the captors, whatever it may be, can not alter the right of jurisdiction.

" The schooner had a commission from a state assuming powers of government, and was commissioned to take Spanish vessels. The brig captured appeared in a Spanish character. The master admits, that when taken, the privateer put a prize master and five men on board. The fact then is not to be questioned, that the brig was in the first instance, captured as prize of war.

" This being the case, it belongs exclusively to the admiralty courts of the United States, to judge of the validity of the capture, or of the competency of the commission, of the effect of the original act of arming within the United States and of every possible question arising out of the capture."

He then reviews the cases on this subject, commencing with the governing case of " *Le Caux* v. *Eden,* Doug. 594, which has since commanded uniform and universal assent."

He then pursues. " After a review of these cases, which contain a course of doctrine and precedents very nearly uniform for the last two hundred years, it would seem that there could remain no doubt of the entire and exclusive jurisdiction of the admiralty in the present case. Here is a suit in trover against the captor for property originally taken on the high seas in the character of a prize. It is not a mere inci-

dental question that is raised, but the validity of the very act of capture is directly arraigned."—" If ever a case was peculiarly fitted for a court of admiralty, sitting under the authority of the United States, and governed by the laws and usages of nations, this must be that case."

The Chancellor then reviews the American cases on the subject, and shows them to lead to the same result.

Lastly, he reviews the opinion of Thompson, Ch. J. "But the Chief Justice, in delivering the opinion of the court, said that he placed his opinion that the Supreme Court had jurisdiction of the cause, 'upon the ground alone,' that the privateer was illegally fitted out in a port of the United States, in violation of the act of Congress of 5th June, 1794." He afterwards adds; " Surely it belonged to the admiralty to take cognizance of such illegal armaments as incidental to the question of prize. It was as much a part of the *prize question*, as the inquiry touching the authority of the commission or the place of the capture, or the national character of the party captured, or his title to the property." He proceeds to review the action of the United States executive and judiciary, upon the subject of captures made by vessels illegally fitted out within the United States, and says; " After the most solemn sanction given to the power of the district and admiralty courts, on this subject, and after the irresistible deductions from these facts, that the common law courts of the individual states, have no jurisdiction in the case, I think I may safely conclude, that the ground taken by the Chief Justice in his opinion, (and which appears not to have been taken at the trial,) is as untenable as any that could have been assumed." p. 347.

*Note by the Reporter.* Had the fitting out of the capturing vessel, in this case, not been accompanied with a violation of our neutrality, and laws, it is clear that the question would have belonged exclusively to the courts of the country of the captor; it is only the illegality of the original equipment which can give to our courts admiralty jurisdiction of the case. Vide *L'Invincible*, 1 Wheat. 238.

☞ The Supreme Court of the United States there held, that

the courts of this country have no jurisdiction to redress any supposed torts committed on the high seas upon the property of its citizens by a cruiser regularly commissioned by a foreign and friendly power, except where such cruiser has been fitted out in violation of our neutrality.

In the case of *La Concepcion*, the Supreme Court of the United States held that where a capture was made of the property of the subjects of a nation in amity with the United States, by a vessel *built, armed, equipped,* and *owned,* in the United States, such capture is illegal, and the property, if brought within our territorial limits, will be restored to the original owners. *La Concepcion*, 6 Wheaton, 235; 5 Condy's R. 77.

In the case of *La Concepcion*, 1821, Mr. Justice Story, in delivering the opinion of the court, puts the whole question in that case upon the single ground that the *ownership* of the vessel, she having been originally built in the United States still continued, although she went to Buenos Ayres, and sailed thence under the colors of that government on her cruise during which the capture was made. He says: "The want of a bill of sale or any document of this nature, or of any direct and positive evidence of an actual sale, leaves no doubt in the mind of the court that no such sale ever was made. The consequence is that the capturing vessel must still be considered as owned in the United States; and according to the decisions which have already been made, the capture was illegal, and the property must be restored to the original Spanish owners. (Vide *The Alerta*, 9 Cranch, 359. *The Divina Pastora*, 4 Wheat. 298. *The Estrella*, 4 Wheat. 298. *La Amistad de Rues*, 5 Wheat. 385.)